UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SUZANNE WINOKUR and GIL WINOKUR,     :
Individually and on Behalf of All Others     :     Case No.
Similarly Situated,     :
     :
          Plaintiffs,     :     **CLASS ACTION**
     :
     -against-     :
     :     **JURY TRIAL DEMANDED**
CHAR-BROIL, LLC,     :
     :
          Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## CLASS ACTION COMPLAINT

Plaintiffs Suzanne and Gil Winokur ("Plaintiffs"), individually on behalf of themselves and all others similarly situated, by their attorneys, Hach Rose Schirripa and Cheverie LLP, bring this class action against defendant Char-Broil, LLC ("Char-Broil" or "Defendant") and allege on personal knowledge, investigation of counsel, and information and belief as follows:

## INTRODUCTION

1.     Char-Broil is a major designer, manufacturer, marketer, distributor and seller of charcoal, gas, and electric outdoor grills, smokers, fryers and related accessories nationwide and internationally.  According to its website, Char-Broil sells its products, including the digital electric smokers at issue, online at Amazon.com, HSN.com, and Char-Broil.com, as well as at Lowe's, Menards, Ollie's Bargain Outlet, Target, and other stores nationwide.

2.     In the marketing of its digital electric smokers with Model Nos. 14202002, 17202002, 14202002-A1, 17202002-A1, 14202004, 17202004, 14202004-A1, 17202004-A1, 19202101, 463246619, 15202043, 17202043, 15202043-A1, 17202042-A1, 14202005, 17202005, 14202005-A1, 17202005-A1 (collectively, the "Defective Smokers") for personal or household

1

use and not for resale, Char-Broil wrongfully and unfairly deceived its customers by representing that the smokers are safe and family-friendly devices that would smoke food over a pre-set time while unattended, and thereby free-up time for family members to enjoy themselves more.  Char-Broil made the express and implied promise that the parts available in any Char-Broil-manufactured electronic digital and/or electrical smoker are dependable and will reliably function in activities common to the use of such smokers sold by Defendant.

3.       It is common and expected that the door to said smoker would be opened while the unit is operating and energized to check, baste, turn and/or wrap the food during the smoking process.  Said normal operation necessitates touching the outer case of the smoker.

4.       Normal operation of the smoker requires it to maintain its set temperature for an extended period of time, generally several hours which may include overnight, during which the smoker must continuously operate.

5.       That the said smokers were defective in that they would leak electrical current during use, thereby energizing their outer case and presenting a shock hazard to the user and/or anyone coming into contact with the smoker while in operation.

6.       Plaintiffs and other members of the putative Class relied on such misrepresentations to their detriment and purchased the Defective Smokers, thereby incurring significant monetary and non-monetary damages as a result of Defendant's conduct complained of herein.  This is a nationwide class action brought by Plaintiffs on behalf of themselves and other similarly situated consumers who purchased the Defective Smokers for personal or household use and not for resale (the "Class" or "Class Members").

7.       On February 15, 2024, the U.S. Consumer Product Safety Commission ("CPSC") issued a recall (Recall number 24-116) (the "Recall") of approximately 211,700 of the Defective

2

Smokers sold in the United States because the digital electric smokers "can leak electrical current during use, posing an electric shock hazard" (the "Defect"). https://www.cpsc.gov/Recalls/2024/Char-Broil-Recalls-Digital-Electric-Smokers-Due-to-Risk-of-Electric-Shock (last accessed August 15, 2024) (the "Recall Notice").

8.      As set forth in the Recall Notice, the Defective Smokers were sold online at Amazon.com, HSN.com, and Char-Broil.com, as well as at Lowe's, Menards, Ollie's Bargain Outlet, Target, and other stores nationwide from April 2015 through January 2024 for between $120 and $600.

9.      As also set forth in the Recall Notice, Char-Broil "received 79 reports of consumers who experienced a minor electric shock from touching the smokers while in use, including one report of a consumer developing a finger blister after the shock."

10.      The National Electrical Code [210.8] requires that all outdoor 125-volt, single-phase, 15-and 20-ampere receptacles installed in outdoors locations shall have ground-fault circuit-interrupter ('GFCI') protection for personnel.

11.      The smokers at issue in the complaint herein are intended to be used outdoors with 125-volt, single-phase, 15-and 20-ampere receptacles.

12.      The leakage of current to the case which occurs in the smokers at issue herein is detected as a ground-fault by a GFCI protected circuit, which causes any such GFCI protected circuit to which a smoker is connected to trip, which shuts off power entirely to the smoker.

13.      When power is cut off to the smoker, it ceases to operate at all until the GFCI is manually reset and power restored.  If the GFCI is reset and the current leakage reoccurs, the GFCI will continue to trip.  Such GFCI tripping turns off the smoker, rendering it unsuitable for use.

14.      The Recall Notice set forth Char-Broil's "remedy."   It advised consumers to

"immediately stop using the recalled electric smokers and contact Char-Broil for a free repair kit[,] which would include "a Ground Fault Circuit Interrupter ('GFCI') plug (also known as a 'pigtail'), a clamshell enclosure to secure the GFCI pigtail, and a cable clamp[,]" as well as "[i]nstructions for installing each of these repair kit items[.]"  The Recall Notice also provides a video with instructions on how to install and secure the GFCI plug that also instructs consumers to test the GFCI prior to each use, an unreasonable "fix" at best.

15.    The GFCI 'pigtail' is nothing more than a GFCI device placed on the smoker's power cord.  It is at best redundant and useless surplusage on any circuit which is already equipped with a GFCI, as outdoor circuits are required to be in accordance with the National Electrical Code.

16.    Unfortunately for Plaintiffs and the Class, the "remedy" is no remedy at all as it disables the smoker entirely rather than correcting the electrical leakage problem itself.  Due to the electrical current leak defect, when the smoker senses the Defect, it merely cuts power to the unit entirely, which immediately renders it useless for smoking. The GFCI pigtail then must be manually reset, as must be the digital smoker's own timer and controls.  The so-called remedy does not actually fix the problem at all; it prevents people from being electrocuted but makes product use impractical: if the smoker senses the electric current leak problem, it would cut power to the unit completely, and then the GFCI plug has to be reset, the device turns off, and all settings, including the timer and controls, have to be reset manually.  The whole point of setting the smoker to work while the consumer is away is defeated.  The value of the smoker thereby is considerably diminished, if not eliminated completely, because it is not, as represented by Defendant, safe and reliable for meal preparation, smoking and cooking.

17.    As a result of Defendant's misconduct, misrepresentations and omissions, Plaintiffs and putative Class and Sub-Class Members have suffered injury in fact, including economic

damages.

18.    Defendant's conduct, as alleged herein, violated state consumer protection laws and breached express and implied warranties of merchantability and fitness for use, as set forth below, and Defendant was unjustly enriched thereby. Plaintiffs therefore bring this class action for injunctive relief and to recover damages and fees and costs, as well as restitution and other equitable relief from Defendant as a result of its unlawful actions.

19.    In light of the large number of digital electric smokers sold by Char-Broil, this class action is the proper vehicle to address Defendant's misconduct and attain relief for the Class.

## PARTIES

**Plaintiffs**

20.    Plaintiffs Suzanne Winokur and Gil Winokur are and were at all times relevant to this matter residents of the county of Queens in New York state and citizens of New York state. On October 7, 2019, Plaintiff Gil Winokur purchased a Char-Broil Electric Smoker, model no. 14202002 (the "14202002 Smoker") for $123.19 plus tax, for a total of $134.12 from amazon.com using the Amazon count of his wife, Plaintiff Suzanne Winokur.

21.    The 14202002 Smoker came with a product manual. (the "14202002 Manual").

22.    Plaintiffs wanted to purchase a safe, easy to digital electric smoker for their home use.

23.    Before using the defective model 14202002 Smoker, Plaintiffs reviewed information about the product on its packaging and labeling, including safety information.

24.    Defendant did not include on its packaging, labeling, or product manuals or product guides that the product contained misinformation regarding the electrical shock hazard that the smoker poses.

5

25.    Plaintiffs relied on Defendant's omissions in purchasing the Defective Smoker.

26.    Plaintiffs also relied on Defendant's misrepresentations in purchasing the Defective Smoker.

27.    Mr. Winokur plugged the Defective Smoker into a GFCI outlet, whereupon the Defect caused the GFCI to be tripped and the unit turned off, thereby making the smoker unusable.

28.    Mr. Winokur, thinking there was something wrong with the outlet, then plugged the smoker into a non-GFCI outlet and experienced electric shocks from the smoker when it was in use.

29.    Plaintiffs and their family stopped using the Defective Smoker because it kept turning off due to the Defect (thereby not allowing it to actually smoke the meat inside), and because it poses the threat of an electric shock and is unusable.

30.    Plaintiffs then learned of the Recall on or about February 15, 2024 through an email from the Amazon Product Safety Team.  The Recall advised that consumers should stop using the device "immediately."

31.    Accordingly, the Defective Smoker became unusable, worthless and has no value.

32.    After Mr. Winokur spoke to Defendant's consumer department, Plaintiffs participated in the Recall, submitting their request for replacement repair parts in or about May 2024. Thereafter, Plaintiffs received the repair kit.

33.    Plaintiffs installed the purported remedy exactly as instructed.  Despite that, when the GFCI plug sensed the leak of electric current, it cut power to the unit entirely, rendering it useless for smoking. The GFCI pigtail then had to be manually reset.

34.    When power was restored to the smoker by resetting the GFCI pigtail, the smoker did not restore its prior operation of smoking mode, but rather defaulted to the initial OFF position,

and then the smoker timer and controls all had to be reset. Due to the Defect, this cycle was then repeated for Plaintiffs.

35. Plaintiffs did not receive the benefit of their bargain because the smoker is unusable due to the Defect, as the smoker will not stay on long enough to reliably smoke food without tripping the GFCI. In addition, the fear of continued electric shocks due to the Defect have prevented using the smoker.

36. Plaintiffs did not receive the benefit of the bargain because the remedy provided by Defendant does not repair the underlying Defect and therefore requires continuous re-setting of the GFCI pigtail when the underlying Defect manifests, followed by restarting the smoker and re-inputting the timing and temperature settings.

37. Had Plaintiffs known or otherwise been made aware of the defect in the Defective Smoker, they would not have purchased it.

38. As a result of Defendant's conduct, Plaintiffs have suffered economic damages because the Defective Smoker that they purchased is now worthless or substantially diminished in value.

**Defendant Char-Broil**

39. Defendant Char-Broil LLC is a Georgia domestic limited liability company, having a principal place of business at 1442 Belfast Avenue, Columbus, Georgia. Since 1948, Char-Broil has brought charcoal grills to market, and in the years that followed, it purports to have introduced innovations to modern grills such as various smokers and fryers and even an infrared cooking system. https://www.Char-Broil.com/about/. At all relevant times hereto, Defendant designed, built, manufactured, marketed, distributed, promoted, and/or sold the Defective Smokers nationwide, including in New York. Upon information and belief, Char-Broil's sole member is

W.C. Bradley Co. ("WC Bradley"), a domestic corporation comprised of companies focused on home and leisure products and services, and organized under the laws of Georgia with principal offices at 1017 Front Avenue, Columbus, Georgia 31901. Defendant Char-Broil therefore is a citizen of the State of Georgia.

40.     On its website, Char-Broil purports to manufacture and sell "easy-to-use and innovative products,"[1] and is touted by WC Bradley as the "smartest brand in outdoor cooking because it delivers innovation and superior performance."[2] Char-Broil branded products are sold throughout North America, Europe, Australia, Latin America, and the Middle East, and purports to be "dedicated to helping consumers have a superior outdoor cooking experience."

## JURISDICTION AND VENUE

41.     This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), diversity jurisdiction pursuant to 28 U.S.C. §1332 (d)(2) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiffs and other Class members are citizens of states different than that of Defendant, and the amount in controversy exceeds the sum of $5,000,000, exclusive of costs and interest.

42.     This Court has personal jurisdiction over Defendant because the claims asserted in this complaint arise from Defendant's conduct within this District. Defendant has been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers, and/or representatives, operated, conducted, engaged in, and carried on a business venture in New York, and/or marketed, advertised, distributed and/or sold the Products, committed a statutory violation within New York related to the allegations made herein, and caused injuries to Plaintiffs and putative Class Members, which arose out of the acts and

---

[1]     https://www.charbroil.com/about/ (last accessed August 15, 2024).
[2]     https://jobs.wcbradley.com/default/go/Char-Broil-Jobs/2536600/ (last accessed August 15, 2024).

omissions that occurred in the state of New York, during the relevant time period. At that time, Defendant was engaged in business activities in New York.

43.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant maintains a substantial presence in this District. Many of the acts and transactions alleged herein, including the dissemination of materially false and misleading information and the sale of the Defective Smokers. Defendant, directly and through their agents, regularly transact business and/or otherwise derive substantial revenue within the City of New York, the State of New York and the United States. Venue also is proper because Plaintiffs reside in this District.

## CLASS ACTION ALLEGATIONS

44.    Plaintiffs bring this action on behalf of themselves and the following Classes pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. Specifically, the Classes are defined as:

> **National Class:** All persons in the United States who purchased the Defective Smokers for personal use and not for resale during the Class Period.
>
> In the alternative, Plaintiffs bring this action on behalf of the following State Sub-Classes:
>
> **Multi-State Sub-Class (Implied Warranty Non-Privity) ("Multi-State Implied Warranty Sub-Class"):** All persons who purchased the Defective Smokers for personal use and not for resale during the Class Period in the following States: Alaska; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Hawaii; Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; West Virginia; and Wyoming;
>
> and
>
> **Multi-State Sub-Class (Express Warranty) ("Multi-State**

**Express Warranty Sub-Class"):** All persons who purchased the Defective Smokers for personal use and not for resale during the Class Period in the following States: California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington;

and

**Multi-State Sub-Class (Consumer Fraud Acts) ("Multi-State Consumer Fraud Acts Sub-Class"):** All persons who purchased the Defective Smokers for personal use and not for resale during the Class Period in the following States: California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York or Washington;

and

**New York Sub-Class**: All persons in New York who purchased the Defective Smokers for personal use and not for resale during the Class Period.

45.    The members of the proposed Classes are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least thousands of Defective Smokers have been sold and leased in the United States, in varying geographical locations. Class and Sub-Class Members can be identified through discovery from records maintained by Defendant.  Class and Sub-Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

46.    Excluded from the Class and Sub-Classes are (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of the Defendant or any entity in which the Defendant has a controlling interest, (b) any legal counsel or employee of legal counsel for the Defendant, and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members. The "Class Period" begins on the date established by

the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ends on the date of entry of judgment.

47.    Plaintiffs' claims are typical of the claims of the Classes, as all Class members were and are similarly affected by Char-Broil's unlawful conduct in violations of the statutory and common law protections that are complained of herein. Plaintiffs and each of the Class members purchased the Defective Smokers. Defendant knowingly concealed, suppressed, and/or fraudulently misrepresented or omitted the actual condition of the Defective Smokers, with the intent that Plaintiffs and other Class members rely thereon in order to coerce the Plaintiffs into purchasing Defendant's smokers.    Plaintiffs and the other Class members have sustained substantial damages, resulting from Defendant's omissions and/or misrepresentations related to the Defective Smokers.

48.    Plaintiffs will fairly and adequately represent and protect the interests of the other Class members and have retained counsel competent and experienced in class action and consumer fraud litigation. Plaintiffs and their counsel are aware of no conflicts of interest between Plaintiffs and the other members of the putative.

49.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Given the common design defect present in all the Defective Smokers, and the uniform misrepresentations and omissions not disclosed to the Plaintiffs and members of the putative Classes, Plaintiffs are not aware of any difficulties in managing the action as a class action.    Pursuing separate actions can create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendant. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class and Sub-Classes to individually redress the wrongs done to them.

50.    Common questions of law and fact exist as to all putative Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a)    whether the Defective Smokers were designed with the alleged defect;

(b)    whether the Defective Smokers are predisposed to shocking the user and failing, as a result of the alleged defect;

(c)    whether the alleged defect and/or inadequate maintenance recommendations cause safety risks;

(d)    whether Defendant knowingly failed to disclose and warn of the defect with the intent that others rely upon such concealment, suppression or omission;

(e)    whether Defendant misrepresented the cause of the shocking problems in the Defective Smokers;

(f)    whether Plaintiffs and members of the Class are entitled to entry of final injunctive relief compelling Defendant to inspect and, as necessary, effectively repair and/or replace the defective components and the resultant problems from shocking and re-start issues in Defective Smokers;

(g)    whether Plaintiffs and members of the Class are entitled to entry of final injunctive relief compelling Defendant to fully and adequately inform consumers of the design defect and/or inadequate maintenance recommendations;

(h)    whether Plaintiffs and members of the Class are entitled to actual damages representing the ascertainable loss of money and/or property and/or value that have been and/or

will be suffered by Plaintiffs and members of the Class as a result of the defect and inadequate remedy;

(i)    whether Defendant breached its implied warranties in that the Defective Smokers were defectively designed;

(j)    whether Defendant breached their express warranties in that the Defective Smokers were defectively designed;

(k)    whether Defendant intentionally or negligently misrepresented material facts concerning the defect in the Defective Smokers;

(l)    whether Defendant was unjustly enriched by its misrepresentations, fraud and breaches of warranty;

(m)    whether Class members are entitled to monetary damages and injunctive relief;

(n)    whether Defendant had a duty to disclose to their consumers material facts concerning the serious problems that would inevitably result from its inherently defective design in the Defective Smokers;

(o)    whether Defendant should be enjoined from engaging in such practices with respect to the Defective Smokers with the defect, known by them to cause serious and dangerous problems;

(p)    the extent the Class and Sub-Classes have sustained damages; and

(q)    the extent Defendant should be held to account for its wrongful conduct.

51.    In the alternative to those claims seeking remedies at law, Plaintiffs and Class and Sub-Class Members allege that no plain, adequate, and complete remedy exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiffs are

inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937).

52.     Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all members of the Classes and Sub-Classes, thereby making appropriate final injunctive relief, as described below, concerning the members of the Class and Sub-Classes as a whole.

53.     Plaintiffs reserve the right to amend the definition of the Class and Sub-Classes if discovery or further investigation reveals that the Class and Sub-Classes should be expanded or otherwise modified.  While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq*); Florida (Fla. Stat. §501.201, *et seq*.); Illinois (815 Ill. Comp. Stat. §505/1, *et seq*.); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.); Michigan (Mich. Comp. Laws §445.901, *et seq*.); Minnesota (Minn. Stat. §325 F.67, *et seq*.); Missouri (Mo. Rev. Stat. §407.010, *et seq*.); New Jersey (N.J, Stat. §56:8-1, *et seq*.); New York (N.Y. Gen. Bus. Law §§349 and 350); and Washington (Wash. Rev. Code §19.86.010, *et seq*.). Plaintiffs have standing to represent the proposed Multi-State Consumer Fraud Acts Sub-Class. Any challenge brought by Defendant regarding Plaintiffs' standing to represent any proposed class should be deferred to the class certification stage because that is what New York law requires.

### **FACTUAL ALLEGATIONS**

### **Char-Broil's Communications with Consumers Misrepresent the Defective Smokers' Safety and Omits the Defect**

54.     From April 2015 through January 2024, Char-Broil developed, marketed and sold a variety of digital electric smokers, including Model Nos. 14202002, 17202002, 14202002-A1, 17202002-A1, 14202004, 17202004, 14202004-A1, 17202004-A1, 19202101, 463246619,

15202043, 17202043, 15202043-A1, 17202042-A1, 14202005, 17202005, 14202005-A1 and 17202005-A1 (the "Defective Smokers").

55.     In one advertisement for its digital electric smokers, Char-Broil shows a man setting his digital smoker and then going out to participate in various activities all day while the meat is prepared by the smoker.[3] It touts its digital smokers as designed to be set and maintain constant temperature for extended time, which would then allow the user to do other things elsewhere while still preparing the food.  The ad ends by saying, "... helping dads everywhere live it up." *Id.*

56.     However, the advertisement failed to disclose that due to the Defect, the smoker in fact will not stay on long enough to reach and maintain operating temperature, much less for an extended period of time, and that users may be subject to electrical shock when using the smoker, and, finally, that the purported "remedy" is inadequate.

57.     The 14202002 Manual states that consumers should "use this cooking guide as an introduction to cooking with the Digital Electric Smoker. It's filled with great tips, tricks and recipes."  Other manuals contained similar statements and similarly failed to warn consumers that just touching the smoker may cause a user to be subject to electrical shock during such typical use. (*See, e.g.*, Model 14202004 Product Manual, p. 1).

58.     These statements failed to disclose that due to the Defect, the smoker in fact will not stay on long enough to reach and maintain operating temperature, much less for an extended period of time, and that users may be subject to electrical shock when using the smoker, and that the purported "remedy" is inadequate.

59.     The 14202002 Manual instructs the consumer on how to prepare the smoker prior to cooking, including plugging in the device, powering it on, setting the temperature and timer,

---

[3]     *See* https://daviddas.com/char-broil-digital-smoker-ads/ (last accessed August 15, 2024).

and how to cook with it, including the same steps as preparing the smoker. (14202002 Manual, at pp. 6-8). Other manuals contained similar instructions and similarly failed to warn consumers that just touching the smoker may cause a user to be subject to electrical shock during such typical use. (*See, e.g.*, Model 17202002 Product Brochure, p. 3-7; Model 14202004 Manual, at pp. 3-4; Model 463246619 Product Manual, pp. 11-12; Model 14202005 Product Manual, pp. 5-6; Model 17202005 Product Manual, pp. 5-6).

60.     Nowhere does the 14202002 Manual or any other manual indicate that due to the Defect, the smoker in fact will not stay on long enough to reach and maintain operating temperature, much less for an extended period of time, and that users may be subject to electrical shock when using the smoker, and that the purported "remedy" is inadequate.

61.     Manuals for the Defective Smokers warned consumers that "[t]o protect against electrical shock, do not immerse cord, plugs, controller or heating element in water or any other liquid." (*See, e.g.*, Model 17202002 Product Brochure, p. 2; Model 17202004 Product Brochure, p. 2; Model 463246619 Product Manual, p. 2; Model 15202043 Product Manual, p. 4; Model 14202005 Product Manual, p. 4; Model 17202005 Product Manual, p. 4).

62.     Nowhere does the Product Manual indicate that due to the Defect, the smoker in fact will not stay on long enough to reach and maintain operating temperature, much less for an extended period of time, and that users may be subject to electrical shock when using the smoker, and that the purported "remedy" is inadequate.

63.     These product manuals also indicate that the product should be used in a GFCI outdoor circuit. (*See, e.g.*, Model 17202002 Product Brochure, p. 2; Model 17202004 Product Brochure, p. 2; Model 463246619 Product Manual, p. 2; Model 15202043 Product Manual, p. 3; Model 14202005 Product Manual, pp. 2-3; Model 17202005 Product Manual, p. 2).

64.     Nowhere does the Product Manual indicate that due to the Defect, the smoker in fact will not stay on long enough to reach and maintain operating temperature, much less for an extended period of time, and that users may be subject to electrical shock when using the smoker, and that the purported "remedy" is inadequate. Indeed, as found out by Plaintiffs, using the product in a GFCI outdoor circuit did not solve the underlying Defect at all and actually makes the purported remedy not only redundant, but ineffectual – the Defective Smokers are unusable.

65.     "Troubleshooting" sections in the manuals set forth multiple potential problems, but none of them indicate that one of the problems could be repeated device-shutdown and electric shock even when taking the precautions presented there – or that the purported "remedy" is inadequate. (*See, e.g.*, Model 17202002 Product Brochure, p. 12-13; Model 17202004 Product Brochure, pp. 12-13; Model 463246619 Product Manual, pp. 34-35; Model 15202043 Product Manual, p. 8; Model 14202005 Product Manual, p. 11; Model 17202005 Product Manual, p. 11-12).

**The Defective Smokers Are Recalled**

66.     In contrast to Defendant's misrepresentations and omissions, the Defective Smokers actually put consumers in danger of electrical shocks. Indeed, at the time the recall was issued, Char-Broil already had received 79 reports of incidents in which consumers experienced electric shocks from touching the smokers while in use, including one report of a consumer developing a finger blister after the shock.

67.     On or about February 15, 2024, the CSPC announced the Recall for the Defective Smokers due to the electric shock hazard that they pose to consumers.

68.     The Recall Notice specifically stated that "The smokers can leak electrical current during use, posing an electric shock hazard."

17

69.     The Recall Notice stated that the following digital electric smokers were being recalled:

a)      Digital Electric Smoker, UPC 099143020020 (Model Nos. 14202002, 17202002, 14202002-A1, 17202002-A1);

b)      Digital Electric Smoker, w/Window, UPC 099143020044 (Model Nos.14202004, 17202004, 14202004-A1, 17202004-A1);

c)      Digital Electric Smoker, Black w/Window, UPC 099143021010 (Model No. 19202101);

d)      Digital Electric Smoker, Medallion, UPC 047362324665 (Model No.463246619);

e)      Digital Electric Smoker, Connected, UPC No. 099143020433 (Model Nos. 15202043, 17202043, 15202043-A1, 17202043-A1); and

f)      Digital Electric Smoker, XL, UPC No. 099143020051 (Model Nos. 14202005, 17202005, 14202005-A1, 17202005-A1).

70.     The Defect renders the Defective Smokers unfit for the ordinary purpose for which they are used, which is safe and reliable meal preparation and cooking.

**The Defect Renders the Defective Smokers Unusable**

71.     As a result of the injury risks to operators associated with the use of the Defective Smokers, the inadequate remedy that prevents continuous use of the Defective Smokers, and by Defendant's own admission in the Recall Notice, the Defective Smokers have been rendered entirely worthless.

72.     Specifically, Defendant's recall notice states that "[c]onsumers should immediately stop using the recalled electric smokers and contact Char-Broil for a free repair kit."

73.     Therefore, the Defective Smokers are worthless because they cannot be used without risk of serious injury, nor can they be used without re-starting.

74.     Moreover, due to the Defect, the Defective Smokers keep being turned off, making them impossible to use.

**The Remedy Provided by the Recall Leaves Consumers With Less Than What They Purchased**

75.     The only remedy provided by Char-Broil to purchasers of the Defective Smokers is to participate in the Recall and order a free "repair kit", consisting of a GFCI plug, a clamshell enclosure to secure the GFCI plug to the smoker's primary plug, and a cable clamp.

76.     In order to install these parts, Char-Broil provides video instruction on how to install the GFCI plug that instructs consumers to first test the GFCI prior to each use of the Defective Smoker.  Thus, in order for a consumer to safely use their Defective Smoker, they must install a GFCI plug directly into it and then conduct a test prior to each smoker use.

77.     However, this "repair kit" is not a repair and is no remedy as it fails to correct the underlying Defect of electric current leak.  If the GFCI plug (which is redundant anyway given the manuals' instruction and the National Electrical Code's requirement to use GFCI outdoor outlets) senses electric current leak, *i.e.*, the uncorrected underlying defect, it cuts power to the smoker completely, requiring manual reset of the GFCI plug, which then moves the smoker to the default "off" position, which then requires re-inputting all the settings the user just put into the machine. This makes it impossible for the consumer to use the product as advertised by setting the machine to cook and leaving to do other activities.

78.     Thus, not only does Char-Broil not offer a solution in the event that the smoker trips the GFCI, but the product has to be re-started and re-set every time the electric current leakage is detected and the GFCI trips.

79.     As a result of Defendant's conduct in connection with the manufacturing, recall and repair, Plaintiffs and Class and Sub-Class Members paid a price premium and sustained economic injuries.

### ESTOPPEL FROM PLEADING AND
### TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

80.     Plaintiffs and the members of the Class had no way of knowing about Defendant's conduct concerning the safety risks associated with the use of the Defective Smokers.

81.     Prior to the recall, neither Plaintiffs nor any other members of the Class, through the exercise of reasonable care, could have discovered the conduct by Defendant alleged herein. Further, Plaintiffs and members of the Class did not discover and did not know facts that would have caused a reasonable person to suspect that Defendant was engaged in the conduct alleged herein. For these reasons, all applicable statutes of limitation have been tolled by the discovery rule concerning claims asserted by Plaintiffs and the Class.

82.     Further, by failing to provide notice of the risks of malfunction or injury associated with the continued use of the Defective Smokers, Defendant concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the Class members.

83.     Upon information and belief, Defendant intended its acts to conceal the facts and claims from Plaintiffs and Class members. Plaintiffs and Class members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or Class members should be tolled.

84.     As a factual matter, Plaintiffs did not learn about the Defect and injury risks until just prior to filing suit. Once Plaintiffs learned of it, they promptly acted to preserve their rights,

filing this action. Defendant is estopped from asserting any statute of limitation defense that might otherwise apply to the claims asserted herein.

## CLAIMS FOR RELIEF

## COUNT I

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiffs, the Multi-State Implied Warranty Sub-Class and, alternatively, the Nationwide Class)**

85.    Plaintiffs repeat and re-allege the preceding allegations as though set forth fully herein.

86.    Plaintiffs' individual claims are brought under the laws of the State in which they purchased their respective Defective Smoker (New York). The claims of absent members of the Multi- State Implied Warranty Sub-Class and Nationwide Class are brought under the state's laws in which they purchased their Defective Smokers and identified below:

      a. Alaska Stat. §§ 45.02.314, et seq.;
      b. Ark. Code Ann. §§ 4-2-314, et seq.;
      c. Cal. Civ. Code §§ 1792, 1791.1, et seq (the "Song-Beverly Act");
      d. Colo. Rev. Stat. Ann. §§ 4-2-314, et seq.;
      e. Conn. Gen. Stat. §§ 42a2-314, et seq.;
      f. Del. Code Ann. Tit. 6, §§ 2-314, et seq.;
      g. D.C. Code §§ 28:2-314, et seq.;
      h. Fla. Stat. §§ 672.314, et seq.;
      i. Haw. Rev. Stat. §§ 490:2-314, et seq.;
      j. Ind. Code §§ 26-1-2-314, et seq.;
      k. Kan. Stat. Ann. §§ 84-2-314, et seq.;
      l. La. Civ. Code Ann. Art. 2520, et seq.;
      m. Md. Code Ann., Com. Law §§ 2-314, et seq.;
      n. Me. Rev. Stat. Ann. Tit. 11, §§ 2-314, et seq.;
      o. Mass. Gen. Laws ch. 106, §§ 2-314, et seq.;
      p. Mich. Comp. Laws Ann. §§ 440.2314, et seq.;
      q. Minn. Stat. §§ 336.2-314, et seq.;
      r. Miss. Code Ann. §§ 75-2-314, et seq.;
      s. Mo. Rev. Stat. §§ 400.2-314, et seq.;
      t. Mont. Code Ann. §§ 30-2-314, et seq.;
      u. Neb. Rev. Stat. Ann. §§ 2-314, et seq.;
      v. Nev. Rev. Stat. §§ 104.2314, et seq.;

    w.  N.H. Rev. Stat. Ann. §§ 382-A:2-314, et seq.;
    x.  N.J. Stat. Ann. §§ 12A:2-314, et seq.;
    y.  N.M. Stat. Ann. §§ 55-2-314, et seq.
    z.  N.D. Cent. Code §§ 41-02-31, et seq.;
    aa. Ohio Rev. Code Ann. §§ 1302.27, et seq.;
    bb. Okla. Stat. Tit. 12A, §§ 2-314, et seq.;
    cc. 13 Pa. Stat. Ann. §§ 2314, et seq.;
    dd. R.I. Gen. Laws §§ 6A-2-314, et seq.;
    ee. S.C. Code Ann. §§ 36-2-314, et seq.;
    ii. S.D. Codified Laws §§ 57A-2-314, et seq.;
    jj.  Tex. Bus. & Com. Code Ann. §§ 2.314, et seq.;
    kk. Utah Code Ann. §§ 70A-2-314, et seq.;
    ll.  Va. Code Ann. §§ 8.2-314, et seq.;
    mm.  Vt. Stat. Ann. Tit. 9A, §§ 2-314, et seq.;
    nn. W. Va. Code §§ 46-2-314, et seq.; and
    oo. Wyo. Stat. Ann. §§ 34.1-2-314, et seq.

87.    Defendant manufactured and distributed Defective Smokers for sale to Plaintiffs and the Class and Sub-Class Members.

88.    Defendant impliedly warranted to Plaintiffs and Class and Sub-Class Members that their Defective Smokers were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

89.    As alleged herein, Defendant breached the implied warranty of merchantability because the Defective Smokers suffer from a safety defect. The Defective Smokers are, therefore, defective, unmerchantable, and unfit for their ordinary, intended purpose.

90.    Due to the safety defect, Plaintiffs and the members of the Class and Sub-Class cannot use their Defective Smokers as intended, substantially free from defects. The Defective Smokers do not provide safe and reliable function as intended, represented, or described and pose a serious risk of injury. As a result, Plaintiffs and the members of the Class and Sub-class cannot use their Defective Smokers for the purposes for which they purchased them.

91.    Furthermore, due to the safety defect, Plaintiffs and the Class and Sub-Class Members cannot operate their Defective Smokers as intended, substantially free from defects,

unless they elect to use a replacement inner pot that holds substantially less volume than that which they purchased. As a result, Plaintiffs and members of the Class and Sub-Class cannot use their Defective Smokers for the purposes for which they purchased them.

92.     Defendant received notice by FedEx and Defendant's counsel received notice by email from Plaintiffs' counsel related to Defective Smokers and the claims in this Complaint. Plaintiffs' counsel served Defendant with pre-suit notice of its breaches of warranties on behalf of Plaintiffs and Class and Sub-Class Members via FedEx on August 19, 2024. Plaintiffs' counsel served Defendant's counsel with pre-suit notice of Defendant's breaches of warranties on behalf of Plaintiffs and Class and Sub-Class Members via email on August 16, 2024.

93.     Plaintiffs did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiffs and Class and Sub-Class Members have been injured in an amount to be proven at trial.

## COUNT II

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Plaintiffs and the New York Sub-Class)

94.     Plaintiffs repeat and re-allege the preceding allegations as though set forth fully herein.

95.     Plaintiffs bring this Count on behalf of themselves and the New York sub Class.

96.     Plaintiffs bring this Count under New York law, N.Y. U.C.C. Law § 2-314.

97.     Defendant manufactured and distributed Defective Smokers for sale to Plaintiffs and the Class and Sub-Class Members.

98.     Defendant impliedly warranted to Plaintiffs and Class and Sub-Class Members that their Defective Smokers were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

99.     As alleged herein, Defendant breached the implied warranty of merchantability because the Defective Smokers suffer from a safety defect. The Defective Smokers are, therefore, defective, unmerchantable, and unfit for their ordinary, intended purpose.

100.    Due to the safety defect, Plaintiffs and the members of the Class and Sub-Class cannot use their Defective Smokers as intended, substantially free from defects. The Defective Smokers do not provide safe and reliable function as intended, represented, or described and pose a serious risk of injury. As a result, Plaintiffs and the members of the Class and Sub-Class cannot use their Defective Smokers for the purposes for which they purchased them.

101.    Furthermore, due to the safety defect, Plaintiffs and the Class and Sub-Class Members cannot operate their Defective Smokers as intended, substantially free from defects, unless they elect to use a replacement inner pot that holds substantially less volume than that which they purchased. As a result, Plaintiffs and members of the Class and Sub-Class cannot use their Defective Smokers for the purposes for which they purchased them.

102.    Defendant received notice by FedEx and Defendant's counsel received notice by email from Plaintiffs' counsel related to Defective Smokers and the claims in this Complaint. Plaintiffs' counsel served Defendant with pre-suit notice of its breaches of warranties on behalf of Plaintiffs and Class and Sub-Class Members via FedEx on August 19, 2024. Plaintiffs' counsel served Defendant's counsel with pre-suit notice of Defendant's breaches of warranties on behalf of Plaintiffs and Class and Sub-Class Members via email on August 16, 2024.

103.    Plaintiffs did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiffs and Class and Sub-Class Members have been injured in an amount to be proven at trial.

<u>**COUNT III**</u>

**VIOLATIONS OF STATE CONSUMER FRAUD ACTS**
**(On behalf of Plaintiffs and the Multi-State Consumer Fraud Acts Sub-Class)**

104.    Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

105.    Plaintiffs bring this Count on behalf of themselves and the Multi-State Consumer Fraud Acts Sub-Class against Defendant.

106.    The Consumer Fraud Acts of the States in the Multi-State Consumer Fraud Acts Sub-Class prohibit unfair or deceptive business practices in trade or commerce. The specific laws at issue are:

a.    California (Cal. Bus. & Prof. Code §17200, *et seq*.)
b.    Florida (Fla. Stat. §501.201, *et seq*.);
c.    Illinois (815 Ill. Comp. Stat. §505/1, *et seq*.);
d.    Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq*.);
e.    Michigan (Mich. Comp. Laws §445.901, *et seq*.);
f.    Minnesota (Minn. Stat. §325F.67, *et seq*.);
g.    Missouri (Mo. Rev. Stat. §407.010, *et seq*.);
h.    New Jersey (N.J, Stat. §56:8-1, *et seq*.);
i.    New York (N.Y. Gen. Bus. Law §§349 and 350); and
j.    Washington (Wash. Rev. Code §19.86.010, *et seq*.).

107.    Plaintiffs and the other members of the Multi-State Consumer Fraud Acts Subclass have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Multi-State Subclass because Plaintiffs and Members of the Multi-State Consumer Fraud

Acts Sub-Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

108.     Defendant engaged in unfair and/or deceptive conduct by making material representations and omissions regarding the safety and utility of the digital electric smokers, and the suggested repair, as discussed herein.

109.     Defendant intended that Plaintiffs and each of the other Members of the Multi-State Consumer Fraud Acts Sub-Class would rely upon its unfair and deceptive conduct, and a reasonable person would be misled by this deceptive conduct described above.

110.     Given Defendant's longstanding position in the industry as a leader in innovative grilling technology, Plaintiffs and reasonable consumers trusted and relied upon Defendant's representatives regarding the safety and utility of the digital electric smokers.

111.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and the other Members of the Multi-State Consumer Fraud Acts Sub- class have sustained damages in an amount to be proven at trial.

## COUNT IV

### VIOLATION OF THE NEW YORK CONSUMER FRAUD ACT NEW YORK GENERAL BUSINESS LAW ("NYGBL") §349, *ET SEQ*. (On Behalf of Plaintiffs and the New York Sub-Class)

112.     Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

113.     Plaintiffs bring this cause of action on behalf of themselves and the New York Sub-Class against Defendant.

114.     N.Y. General Bus. L. § 349, et seq. ("GBL § 349") prohibits "deceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in [New York]."

115.     As fully alleged above, throughout the Class Period, by advertising, marketing, distributing, and/or selling the Defective Smokers with claims that they make cooking and preparation easier to Plaintiffs and other Class members, Defendant engaged in, and continues to engage in, deceptive acts and practices because the Defective Smokers in fact made food preparation more difficult.

116.     Additionally, throughout the Class Period, by failing to disclose the Defect to Plaintiffs and other Class members, Defendant engaged in, and continues to engage in, deceptive acts and practices.

117.     Plaintiffs and other Class members seek to enjoin such unlawful, deceptive acts and practices as described above. Each of the Class members will be irreparably harmed unless the unlawful, deceptive actions of Defendant are enjoined in that Defendant will continue to falsely and misleadingly advertise that its Defective Smokers are effective cooking machines and fail to disclose that they are not.

118.     Defendant's marketing and advertising of the Defective Smokers were likely to mislead reasonable consumers acting reasonably under the circumstances.

119.     Defendant's omission of the material fact of the Defect and its inadequate remedy were likely to mislead reasonable consumers acting reasonably under the circumstances.

120.     Plaintiffs would not have purchased the Defective Smokers from Char-Broil and/or would not have paid as much for them had they known about the Defect.

121.    Plaintiffs were injured in fact and lost money as a result of Defendant's conduct. Plaintiffs paid for effective smokers but did not receive such products. The products Plaintiffs received were worth less than the products for which they paid.

122.    Plaintiffs and Class and Sub-Class Members seek restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, enjoining Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under GBL § 349.

## COUNT V

### VIOLATION OF THE NEW YORK CONSUMER FRAUD ACT NEW YORK GENERAL BUSINESS LAW ("NYGBL") §350, *ET SEQ.* (On Behalf of Plaintiffs and the New York Sub-Class)

123.    Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

124.    Plaintiffs bring this cause of action on behalf of themselves and the New York Sub-Class against Defendant.

125.    N.Y. General Bus. L. § 350, et seq. ("GBL § 350") makes "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York unlawful. GBL § 350 provides that "[i]n determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescription in said advertisement, but also any such conditions as are customary and usual."

126.    Throughout the Class Period, by advertising, marketing, and/or selling the Defective Smokers with claims that they make cooking and preparation easier to Plaintiffs and other Class and Sub-Class Members, Defendant engaged in, and continues to engage in, false advertising concerning the efficacy of the Defective Smokers.

127.    Plaintiffs and other Class and Sub-Class Members seek to enjoin such false advertising as described above. Each of the Class and Sub-Class Members will be irreparably harmed unless the unlawful actions of Defendant are enjoined in that Plaintiffs will continue to be unable to rely on Defendant's representations regarding the efficacy of the Defective Smokers.

128.    Defendant's marketing and advertising of the Defective Smokers were likely to mislead reasonable consumers acting reasonably under the circumstances.

129.    Plaintiffs would not have purchased the Defective Smokers from Char-Broil and/or would not have paid as much for them had they known about the Defect and the inadequate remedy.

130.    Plaintiffs were injured in fact and lost money as a result of Defendant's conduct. Plaintiffs paid for effective smokers, but did not receive such products. The products Plaintiffs received were worth less than the products for which they paid.

131.    Plaintiffs and Class members seek restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, enjoining Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under GBL § 350.

## **<u>COUNT VI</u>**

### **UNJUST ENRICHMENT/QUASI-CONTRACT**
**(On Behalf of Plaintiffs, the Multi-State Implied Warranty Sub- Class, and the Multi-State Express Warranty Sub-Class, and, alternatively, the New York Sub-class)**

132.    Plaintiffs repeat and reallege the allegations in the preceding paragraphs as if fully set forth herein.

133.    Plaintiffs' individual claims are brought under the laws of the State in which they purchased their Defective Smokers (New York). The claims of absent members of the Multi-State Implied Warranty Sub-Class and Multi-State Express Warranty Sub-Class are brought under the laws of the State in which they purchased their Defective Smokers.

134.    Plaintiffs and putative Class Members conferred a benefit on Defendant when they purchased the Defective Smokers, which Defendant knew.

135.    Defendant either knew or should have known that the payments rendered by Plaintiffs and the Sub-Classes were given with the expectation that the Defective Smokers would have the qualities, characteristics, and suitability for use represented and warranted by Char-Broil. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

136.    By its wrongful acts and omissions described herein, including selling the Defective Smokers, which contain both a safety defect described in detail above and which do not safely contain the capacity represented, did not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiffs and putative Sub-Class Members.

137.    Plaintiffs' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

138.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and putative Sub-Class Members when it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the

30

profits, benefits, and other compensation obtained from its wrongful conduct described herein in connection with selling the Defective Smokers.

139.    Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Defective Smokers, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured the Defective Smokers, and Defendant misrepresented by omission the nature of the Defective Smokers and knowingly marketed and promoted the dangerous Defective Smokers, which caused injuries to Plaintiffs and the members of the Sub-Classes because they would not have purchased the Defective Smokers based on the exact representations if the true facts concerning the Defective Smokers had been known.

140.    Plaintiffs and putative Sub-Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Defective Smokers on the same terms or for the same price had they known the true nature of the Defective Smokers and the misstatements regarding what the Defective Smokers were and their characteristics.

141.    Defendant either knew or should have known that payments rendered by Plaintiffs and putative Sub-Class Members were given and received with the expectation that the Defective Smokers would work as represented by Defendant in advertising, on Defendant's websites, and the Defective Smokers' labels and packaging. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

142.    Plaintiffs and putative Sub-Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

143.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and putative Sub-Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

## COUNT VII

### BREACH OF EXPRESS WARRANTIES
**(On Behalf of Plaintiffs and the Multi-State Express Warranty Sub-Class)**

144.    Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

145.    Defendant provided Plaintiffs and Sub-Class Members with an express warranty in the form of representations and marketing regarding the safety of the Defective Smokers.

146.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

147.    These affirmations of fact became part of the basis for the bargain and were material to Plaintiffs' and Sub-Class Members' transactions.

148.    Plaintiffs and Sub-Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

149.    Defendant received notice by FedEx and Defendant's counsel received notice by email from Plaintiffs' counsel related to Defective Smokers and the claims in this Complaint. Plaintiffs' counsel served Defendant with pre-suit notice of its breaches of warranties on behalf of Plaintiffs and Class and Sub-Class Members via FedEx on August 19, 2024. Plaintiffs' counsel served Defendant's counsel with pre-suit notice of Defendant's breaches of warranties on behalf of Plaintiffs and Class and Sub-Class Members via email on August 16, 2024.

150.    Defendant thereby breached the following state warranty laws:

a.    Cal. Comm. Code § 2313;
b.    Fla. Stat. § 672.313;
c.    106 Mass. Gen. Laws Ann. § 2-313;
d.    M.C.L.A. § 440.2313;
e.    Minn. Stat. § 336.2-313;
f.    R.S. Mo. § 400.2-313;
g.    N.J. Stat. Ann. § 12A:2-313;
h.    810 ILCS § 5/2-313(1)(a)-(b); and
i.    Wash. Rev. Code Ann. § 6A.2-313.

151.    Defendant breached the express warranty because the Defective Smokers cannot be safely as advertised due to the material defect the Defective Smokers contain and that was omitted from the marketing of the Defective Smokers.

152.    As a direct and proximate result of Defendant's breach of the express warranty, Plaintiffs and Sub-Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

## COUNT VIII

### BREACH OF EXPRESS WARRANTIES
**(On Behalf of Plaintiffs and the New York Sub-Class)**

153.    Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

154.    Plaintiffs bring this Count on behalf of themselves and New York Class.

155.    Plaintiffs bring this Count under New York law.

156.    Like many states, New York law states express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods, which are made as part of the basis of the bargain that the goods shall conform to the description. See N.Y. U.C.C. Law § 2-313.

157.    Defendant, as the marketers, labelers, distributors, and/or sellers, expressly warranted the representations directed to the Defective Smokers.

158.    Plaintiffs formed a contract with Defendant at the time they purchased the Defective Smokers. The terms of that contract include the promises and affirmations of fact that Defendant made through an extensive, uniform, nationwide marketing campaign. Among other affirmations of fact and promises described herein, Defendant represents that the Defective Smokers have the qualities the representations proclaim they do.

159.    Defendant's express warranties and their affirmations of act and promises made to Plaintiffs and Sub-Class Members regarding the Defective Smokers became the basis of the bargain between Defendant and Plaintiffs and the Sub-Class, thereby creating an express warranty that the Defective Smokers would confirm to the representations, and the affirmations of fact, representations, promises, and descriptions contemplated therein.

160.    Contrary to Defendant's affirmations of fact and promises, the Defective Smokers do not conform to the representations. Defendant breached the express warranties and/or contract obligations by placing the Defective Smokers into the stream of commerce and selling the Defective Smokers to consumers when the Defective Smokers are not safe or reliable for use because a material defect renders them incapable of being used at the capacity advertised in a safe manner.

161.    As such, Defendant's Defective Smokers do not conform to the express warranties because the representations are false or misleading.

162.    Defendant made the representations intending that Plaintiffs and Sub-class Members would rely on the representations. Plaintiffs and Sub-Class Members did rely on Defendant's representations when deciding to purchase the Defective Smokers.

163.    Where required, Defendant's affirmations of fact and promises were material to Plaintiffs' and Sub-Class Members' decision to purchase the Defective Smokers.

164.    All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiffs and Sub-Class Members.

165.    Defendant received notice by FedEx and Defendant's counsel received notice by email from Plaintiffs' counsel related to Defective Smokers and the claims in this Complaint. Plaintiffs' counsel served Defendant with pre-suit notice of its breaches of warranties on behalf of Plaintiffs and Class and Sub-Class Members via FedEx on August 19, 2024. Plaintiffs' counsel served Defendant's counsel with pre-suit notice of Defendant's breaches of warranties on behalf of Plaintiffs and Class and Sub-Class Members via email on August 16, 2024.

166.    As a direct and proximate result of Defendant's breaches of express warranty, Plaintiffs and Sub-class Members have been damaged because they did not receive the Product as expressly warranted by Defendant. Plaintiffs and Sub-Class Members did not receive the benefit of the bargain and suffered damages by purchasing the misrepresented Defective Smokers at a price premium.

167.    Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated members of the Class and Sub-Classes, pray for relief and judgment, including entry of an order:

A.    Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiffs as Class Representative, and appointing Plaintiffs' counsel as Class Counsel;

B.    Directing that Defendant bear the costs of any notice sent to the Class(es);

C.    Awarding Plaintiffs and Class and Sub-Class Members compensatory, statutory, actual, or other monetary damages, in an amount to be determined at trial;

D.    Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Defective Smokers or order Defendant to make full restitution to Plaintiffs and the members of the Class(es);

E.    Awarding restitution and other appropriate equitable relief;

F.    Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

G.    Granting an Order requiring Defendant to fully and adequately disclose the safety risks associated with the Defective Smokers to anyone who may still be at risk of buying and using the Defective Smokers;

H.    Granting an Order requiring Defendant to offer a repair kit which actually corrects the electrical leakage issue and/or repair and/or replace the affected smokers at no cost to the consumer as part of the recall;

I.    Ordering a jury trial and damages according to proof;

J.    Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

K.    Awarding attorneys' fees and litigation costs to Plaintiffs and members of the Class(es);

L.    Awarding pre-judgment and post-judgment interest;

M.    Awarding punitive damages; and

N.    Ordering such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated: August 19, 2024                    Respectfully submitted,

                                          **HACH ROSE SCHIRRIPA & CHEVERIE, LLP**

                                          */s/  Frank R. Schirripa*
                                          Frank R. Schirripa
                                          Daniel B. Rehns
                                          Jay P. Saltzman
                                          John W. Baylet
                                          112 Madison Avenue, 10th Floor
                                          New York, New York 10016
                                          Tel: 212-213-8311
                                          fschirripa@hrsclaw.com
                                          drehns@hrsclaw.com
                                          jsaltzman@hrsclaw.com
                                          jbaylet@hrsclaw.com

                                          *Attorneys for Plaintiffs and Putative Class Members*